UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 8:20-cr-191-T-35TGW

JACOREY T. CHATMAN
_____/

**O R D E R**

Before the Court is Defendant Jacorey T. Chatman's *Motion to Consider Local Placement Under 18 U.S.C. § 4241(d)* (Doc. 28) and the government's response in opposition to same (Doc. 33). For the reasons discussed below, Chatman's motion is denied.

I.

Chatman stands indicted with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). According to the government, this charge stems from a December 16, 2019, incident involving an exchange of gun fire at the intersection of 56th Street North and Sligh Avenue in Tampa, Florida. (Doc. 30). Video evidence purportedly establishes that Chatman was at the scene of this shooting carrying a firearm and was later seen, along with another alleged shooter, entering a vehicle and fleeing the area. *Id*. The government further avers that officers recovered shell casings from the vicinity where this incident occurred. *Id*.

At his initial appearance on this charge, Chatman's appointed counsel moved *ore tenus* to have Chatman undergo a psychiatric examination to determine his competency. The government did not object to this request, and the Court thereafter found there was reason to believe Chatman was suffering from a mental disease or defect, which rendered him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (Doc. 15). As a result, the Court directed that Debra A. Goldsmith, Ph.D., conduct an examination of Chatman pursuant to 18 U.S.C. § 4241(b) and report her findings to the Court. *Id*.

Dr. Goldsmith later issued a report, in which she opined that Chatman was not competent to proceed in this case based upon Intellectual Development Disorder-319.00, and that he met the criteria for referral to a federal facility for competency restoration. Dr. Goldsmith cautioned, however, that it was unlikely Chatman's intellectual functioning would improve significantly.

At a subsequent hearing on the matter, the government and Chatman, through counsel, advised the Court that they did not object to Dr. Goldsmith's competency findings, that they did not seek to introduce any additional evidence on that issue, and that there was thus no need for a formal competency hearing pursuant to 18 U.S.C. § 4241(c). Based on the information before it, the Court found that a preponderance of the evidence supported a finding that Chatman was mentally incompetent to proceed in this action. (Doc. 23) (citing 18 U.S.C. § 4241(d)). Defense counsel requested, however, that she be allowed an opportunity to submit

2

evidence and legal authority regarding Chatman's placement while undergoing competency restoration. *Id*. The Court set a briefing schedule on that issue, which it extended on several occasions at the parties' request. (Docs. 24, 25, 29-32).

Chatman's instant motion, opposed by the government, followed. (Docs. 28, 33). The Court heard oral argument on the matter on October 8, 2020, and again on November 17, 2020.

II.

The principal form of relief Chatman seeks in his motion is that the Court allow him to remain on release and to undergo competency restoration evaluation and training at a local mental health facility known as Gracepoint. (Doc. 28). In support of this request, Chatman makes various arguments regarding the statutory provision—18 U.S.C. § 4241(d)—which governs the determination and disposition of a defendant's mental competency to stand trial. That provision states:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court *shall* commit the defendant to the custody of the Attorney General. The Attorney General *shall* hospitalize the defendant for treatment in a *suitable facility . . . for such a reasonable period of time, not to exceed four months,* as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

18 U.S.C. § 4241(d) (emphases added).

Chatman's first argument is that section 4241(d) does not require custodial hospitalization. (Doc. 28). As he acknowledged at oral argument, however, this contention is foreclosed by Eleventh Circuit precedent, which holds that section 4241(d) mandates a defendant deemed incompetent be committed to the custody of the Attorney General. *United States v. Cobble*, 724 F. App'x 753, 754 (11th Cir. 2018)[1] (per curiam) ("A district court has no authority to circumvent the statutory mandate that a person found mentally incompetent must be committed to the Attorney General for hospitalization."); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990) ("Once the court found by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to stand trial, then it was required 'to commit the defendant to the custody of the Attorney General.'"); *see also United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008) ("[I]n contrast to the discretion afforded district courts in deciding whether to commit a defendant for a preliminary competency examination, once a defendant is found incompetent, commitment pursuant to [section] 4241(d) is mandatory.") (internal citations omitted); *United States v. Ferro*, 321 F.3d 756, 761 (8th Cir. 2003) (finding that the involuntary hospitalization and commitment to the custody of the Attorney General is required by the statutory language of section 4241(d)); *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000) (stating that section 4241(d) establishes a general rule of commitment without a "case-by-case choice by

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

the district court as to whether to incarcerate once the incompetency finding has been made"). Because Chatman has been found incompetent to proceed with his case pursuant to section 4241(d), the Court is bound by this line of authority to remand him to the custody of the Attorney General.

Chatman's next argument is that involuntary commitment under section 4241(d) violates section 504 of the Rehabilitation Act, which prohibits discrimination against individuals with disabilities. (Doc. 28). Although Chatman conceded at oral argument that this proceeding is not the appropriate forum for his Rehabilitation Act claim, *see United States v. Quintero*, 2019 WL 3973706, at *3-4 (D. Ariz. Aug. 22, 2019) (finding that a criminal case "is not the correct forum" for the defendant's argument that mandatory custodial competency restoration violates the Rehabilitation Act), *appeal docketed* (9th Cir. Aug. 30, 2019), he nonetheless requests that the Court stay this matter so that he can pursue such a claim in a civil action (Doc. 28 at 8).

There are at least two problems with Chatman's proposed approach, beginning with the fact that he has not initiated a civil proceeding based on a violation of the Rehabilitation Act. Nor is it clear that he actually intends to pursue such a claim. As a result, the Court declines to impose a stay at this juncture.[2]

---

[2] Should Chatman file such an action, he may renew his request for a stay by submitting a motion with supporting authority.

Chatman next contends that the Attorney General has improperly delegated his authority to the Bureau of Prisons (BOP) to determine what constitutes a "suitable facility" under section 4241(d).[3]  As he explained at oral argument, Chatman's concern is that, in determining where he is to be hospitalized, the BOP will not adhere to its statutory obligations to "consider the suitability of the facility's rehabilitation programs in meeting [his] needs" (Doc. 28 at 10) (citing 18 U.S.C. § 4247(i)), and instead will simply designate him to an out-of-state medical center, *id.* at 11-12.  Chatman claims that such a designation would be inappropriate given the "unusual circumstances" present in this case, which—he claims—"'warrant[ ] . . . hospitalization in a local facility accessible to BOP medical experts and less harmful to'" him.  *Id.* at 10 (quoting *United States v. Dalasta*, 856 F.3d 549, 555 (8th Cir. 2017)).  He represents, for example, that the State of Florida has previously found him to be incompetent, not restorable, and thus not a proper subject for involuntary placement.  *Id.* at 10-11.

As discussed at oral argument, Chatman's concern about the suitability determination is based on conjecture insofar as the BOP has yet to make such an assessment.  To the extent Chatman seeks the Court to oversee or intervene in the Attorney General or the BOP's decision making process on this issue, such relief is

---

[3] The term "suitable facility" is defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant."  18 U.S.C. § 4247(a)(2).

unwarranted.[4]  Seeming to recognize as much, Chatman asked at oral argument that he at least be allowed an opportunity to submit relevant evidence and information to the BOP before it renders its determination, and that he be notified of the BOP's decision once it is rendered.  The government did not object to either of these forms of relief.

Chatman's final request is that the Court confine his commitment to thirty days.  The Court declines at this stage to impose such a temporal restriction on the BOP.  Any consideration of this type of limitation is better left until after the healthcare providers and other experts affiliated with the BOP have received and evaluated the necessary information, including that obtained through an in-person examination of Chatman.  *See United States v. Brennan*, 354 F. Supp. 3d 250, 262 (W.D.N.Y. Jan. 25, 2019) ("[T]he Court does not find it appropriate to set a firm outer limit on the length of the [competency restoration] commitment at this point, before the relevant medical personnel have even had the chance to examine Defendant. . . . [Such a] determination . . . will depend, in part, on a medical assessment of Defendant's progress, if any, in responding to treatment."), *aff'd*, 928 F.3d 210 (2d Cir. 2019).

---

[4] It bears noting that at least one court has rejected a similar request for judicial involvement in the suitability determination.  *See Quintero*, 2019 WL 3973706, at *3 (observing that Congress delegated "[t]he discretion of what hospital or facility [to] be utilized for [a competency] restoration determination" to the Attorney General, not the courts).

III.

In light of the above, it is hereby ORDERED as follows:

1. Chatman's *Motion to Consider Local Placement Under 18 U.S.C. § 4241(d)* (Doc. 28) is denied.

2. On a date to be determined as set forth below, pursuant to 18 U.S.C. § 4241(d)(1), Chatman shall be committed to the custody of the Attorney General, who shall hospitalize Chatman for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings in this case to go forward.[5]

3. The director of the designated facility shall advise the Court of Chatman's status within thirty (30) days of his arrival. *Brennan*, 354 F. Supp. 3d at 262 (requiring the BOP to provide a report regarding the defendant's prognosis within a certain number of days of his hospitalization). If the director finds that Chatman requires additional evaluation and training beyond this thirty-day period, he shall so advise the Court and thereafter provide an update as to Chatman's status every forty-five (45) days during the reasonable commitment period. If necessary, the Court will entertain a request for an additional reasonable period of commitment as authorized under 18 U.S.C. § 4241(d)(2).

---

[5] Prior to the BOP's suitability determination, as the government agreed to at oral argument, Chatman shall be permitted to supply the BOP with the information he deems appropriate to assist the BOP in rendering its determination.

4. The parties shall furnish to the director of the designated facility any information that is relevant to the issue of Chatman's competency, including a copy of Dr. Goldsmith's report, the indictment, the applicable law enforcement reports, and the medical documentation from Chatman's state court proceedings.

5. If the director of the designated facility determines that Chatman has recovered to the extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the director shall file a certificate to that effect with the Clerk of Court.

6. Once the designated facility has been determined, the government shall promptly file a notice advising Chatman and the Court of that facility and the date upon which Chatman is required to report there. Such date shall not be less than one (1) week from the date on which Chatman receives notification of the designated facility. One or both of Chatman's parents shall thereafter transport Chatman to the designated facility on the date indicated. Chatman's failure to report to the designated facility on the specified date shall be deemed a violation of the conditions of his pretrial release. Chatman shall continue to wear his GPS monitoring unit until he surrenders himself to the designated facility, and Chatman's parent(s)—with the assistance of defense counsel—shall thereafter promptly deliver the GPS monitoring unit to the Pretrial Services Office.

7. Upon the conclusion of Chatman's treatment at the designated facility, one or both of Chatman's parents shall transport him from the designated facility back to his residence. Defense counsel shall contact the Pretrial Services Office upon

Chatman's completion of his treatment to arrange to have the GPS monitoring unit reconnected to him.

DONE and ORDERED in Tampa, Florida, this 19th day of November 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record
United States Marshal's Office
Pretrial Services Office